UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of
  Lehman Brothers Holdings Inc.

---

LH 1440 L.L.C.,

  Appellant,

-against-

State Street Bank and Trust Company,

  Appellee.



No. 10 Civ. 6707 (LTS)(AJP)

## MEMORANDUM OPINION

LH 1440 L.L.C. ("LH 1440" or "Appellant") appeals the July 21, 2010, Memorandum Decision of the United States Bankruptcy Court for the Southern District of New York (Peck, B.J.) granting the motion of State Street Bank and Trust Company ("State Street" or "Appellee") to dismiss Appellant's Amended Adversary Complaint (the "AAC"). See LH 1440 L.L.C. v. Lehman Commercial Paper, Inc. (In re Lehman Bros. Holdings, Inc.) Chapter 11 Bankr. Nos. 08-13555 (JMP), 08-13900(JMP), Adv. Pro. No. 09-01138 (JMP), 2010 WL 2889527 (Bankr. S.D.N.Y. July 21, 2010) ("LH 1440 II"). Plaintiff's initial complaint had been dismissed, with leave to amend, by the Bankruptcy Court in September 2009. See LH 1440 L.L.C. v. Lehman Commercial Paper, Inc. (In re Lehman Bros. Holdings, Inc.) 416 B.R. 392, 394 (Bankr. S.D.N.Y. 2009) ("LH 1440 I"). The Court has jurisdiction of this appeal pursuant to 28 U.S.C. §158(a)(1), and has reviewed thoroughly and considered carefully the parties' submissions. For the reasons that follow, the Bankruptcy Court's order dismissing the AAC is

affirmed.

## BACKGROUND AND PROCEDURAL HISTORY

On June 8, 2007, Appellant obtained financing from Lehman Brothers Holdings, Inc. ("LBHI"), in connection with the purchase and improvement of a parcel of land located at 1440 Story Avenue in the Bronx, New York (the "Acquired Property"). The transaction is reflected in an Acquisition and Project Loan Agreement and a Building Loan Agreement, as well as a Consolidated, Amended and Restated Acquisition Loan Mortgage and Security Agreement (the "Security Agreement"), an Option Agreement, a Memorandum of Option Agreement, a Consolidated, Amended and Restated Acquisition Loan Promissory Note (the "Acquisition Loan Note"), a Project Loan Note, and a Building Loan Note,[1] all executed on June 8, 2007. The Security Agreement recites that Appellant, as mortgagor, "has obtained a loan, which shall consist of (i) an [A]cquisition [L]oan of $15,691,568.31 . . ., and (ii) a [P]roject [L]oan of $6,232,323.69," as well as "a loan from [LBHI] (the 'Building Loan') . . . in the stated principal amount of $4,875,819.00," and that these loans are reflected in the three promissory notes identified above. (Designated Joint Appellate Record ("DJAR"), Ex. 24 ("AAC"), Ex. C ("Security Agreement") at 1.)[2]

In May 2007 Appellee entered into a master repurchase agreement (the "MRA") with Lehman Commercial Paper, Inc. ("LCPI"), pursuant to which Appellee purchased a pool of

---

[1] Of the three notes, only the Acquisition Loan Note was made a part of the Designated Joint Appellate Record. However, the "Recitals" section of the Security Agreement references all three notes.

[2] The Acquisition and Project Loan Agreement states that the Acquisition Loan amount is $15,649,568.31, i.e., $42,000 less than the Acquisition Loan amount recited in the Security Agreement.

commercial loans from LCPI for approximately $1 billion. (See AAC ¶ 11; LH 1440 I, 416 B.R. at 394.[3]) LCPI subsequently acquired from its affiliate LBHI the loans that are the subject of this appeal, and, pursuant to the terms of the MRA, substituted the Acquisition Loan into the asset pool held by Appellee. LH 1440 I, 416 B.R. at 395. LCPI later filed a Chapter 11 bankruptcy petition and defaulted on its obligation under the MRA to repurchase the financial assets contained in the loan pool. Id. On February 17, 2009, Appellee and LCPI entered into an Assignment and Assumption agreement (the "Assignment Agreement") purporting to transfer the Acquisition Loan from LCPI to Appellee,[4] effective as of September 17, 2008. (AAC, Ex. D ("Assignment Agreement").)[5] The Acquisition Loan is fully funded, while the Project Loan and the Building Loan, which are "used to maintain and improve the [A]cquired [P]roperty and to fund interest payments on the Acquisition Loan," are not. LH 1440 I, 416 B.R. at 395. The Acquired Property "required and [still] requires substantial investment to attain commercial viability." (AAC ¶ 36.)

---

[3]   While some of the facts set forth in the Bankruptcy Court's September 25, 2009, LH 1440 I decision are not reflected in the DJAR or addressed in the AAC, those facts are not in dispute and are noted here merely for background.

[4]   The agreement provides that the documents assigned were: the Acquisition and Project Loan Agreement, "solely as it relates to the Acquisition Loan;" the Acquisition Loan Note; two earlier promissory notes that had been consolidated into the Acquisition Loan Note; the Security Agreement; two earlier mortgages that had been consolidated into the Security Agreement; and the Collateral Assignment of Interest Rate Protection Agreement (which is not a part of the DJAR), "solely as it relates to the Acquisition Loan." (Assignment Agreement, Schedule 2.)

[5]   On February 24, 2009, the bankruptcy court signed a stipulation and order executed by Appellee, LCPI and LBHI acknowledging the Assignment Agreement and its validity as to the parties thereto, and reserving Appellant's right to pursue its claims against Appellee (as well as those against LCPI and LBHI, which Appellant has apparently since withdrawn). (AAC, Ex. E.)

Appellant commenced an adversary proceeding on March 31, 2009, against State Street, LBHI and LCPI seeking, inter alia, a declaratory judgment that the relevant loan agreements constitute a single loan and Appellee has acquired that loan. Appellee seeks, essentially, to establish that the obligations to fund the outstanding portions of the Project and Building Loans are inseparable from the right to collect payments due on the Acquisition Loan, such that State Street cannot properly proceed with efforts to exercise rights against LH 1440 under the Acquisition Loan Note and related loan security provisions while the outstanding Project and Building loan commitments remain unfunded.

Appellee moved to dismiss the adversary complaint and, on September 25, 2009, the Bankruptcy Court issued the LH 1440 I decision granting that motion. Citing express provisions in the LBHI/LH 1440 loan documentation that permitted the division and transfer of rights under the various documents, the Bankruptcy Court held that "the transfer provisions, along with the splitting clause in each of the loan agreements, establish that each of the loans was individually transferable," LH 1440 I, 416 B.R. at 397, and concluded that, under the unambiguous terms of the Acquisition Loan documentation "[t]his right to liberally assign and transfer the loans separately is without restriction and is not conditioned upon or tied in any way to the transfer of any other loans," id. "Given the express language in the loan documents allowing for splitting and free transferability of the loans," the Bankruptcy Court held, "LH 1440 is unable to state a claim upon which relief may be granted as to State Street." Id. The court noted, however, what it characterized as "a disconnect between what the documentation expressly allows and the allegations of LH 1440 as to what it understood or expected when it entered into the underlying loan transactions," id., observed that "it is unclear whether the

transactions between LBHI and LH 1440 may or may not have constituted an integrated transaction and what the parties actually intended," and refused to dismiss the claims against LBHI and LCPI, id. at 399.

The Bankruptcy Court afforded Appellant the opportunity to amend its complaint as against State Street to allege plausibly that State Street had actual or constructive notice that the three loans and the rights and obligations attendant thereto were both interrelated and inseparable. Appellant filed the AAC on October 5, 2009. Appellee moved to dismiss that complaint, and the Bankruptcy Court granted the motion, holding that Appellant's amended allegations were insufficient in that they were contradicted by the terms of the loan documentation. The AAC was dismissed for failure to state a claim as against State Street and this appeal ensued. See LH 1440 II, 2010 WL 2889527.

The parties' dispute as to the sufficiency of the AAC turns fundamentally on the question of whether Appellant can plausibly state a claim that Appellee is obligated to fund the undisbursed Project Loan and Building Loan amounts notwithstanding the fact that the MRA asset pool holds only the Acquisition Loan Note and related documentation, and purported to take assignment of the Acquisition and Project Loan Agreement only insofar as it related to rights to the already-disbursed Acquisition Loan amount. Appellant argues that the relationship among the transactions, and cross-references and the use of collective terms in certain documentation relating to the three loans, render the Acquisition Loan a component of a larger loan comprised of the Acquisition Loan, the Project Loan and the Building Loan. Appellant further argues that the unitary nature of this single loan imposes on the holder of the Acquisition Loan the obligation to disburse the funds relating to the Project Loan and the Building Loan. Thus, according to Appellant, when the Acquisition Loan was transferred into the asset pool, the

obligation to fund the remaining disbursements under the other two component loans was transferred along with it.

Appellee contends, and the Bankruptcy Court held, that the Acquisition Loan's (as well as the other two loans') severability and transferability provisions unambiguously permitted LCPI to split off and transfer away its rights to receive payment on the fully-funded Acquisition Loan without obligating the transferee to make future disbursements under the Project Loan or the Building Loan, even if the loans were interrelated.

## DISCUSSION

28 U.S.C. § 158(a)(1) vests district courts with jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. In re Bayshore Wire Products Corp., 209 F.3d 100, 103 (2d Cir. 2000); Fed. R. Bankr. P. 8013. Rule 12(b) of the Federal Rules of Civil Procedure applies in adversary proceedings. Fed. R. Bankr. P. 7012(b). "Because the sufficiency of a complaint under Rule 12(b)(6) is a question of law, the Court reviews the Bankruptcy Court's decision to grant the motion to dismiss de novo." Vargas Realty Enterprises, Inc. v. CFA W. 111 Street, L.L.C., 440 B.R. 224, 232 (S.D.N.Y. 2010) (internal quotation marks and citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss a complaint, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949

(2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard applies to all civil actions. Iqbal, 129 S. Ct. at 1953. In adjudicating the motion, the Court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in [the complaint] by reference." Rothman v. Gregor, 220 F.3d 81, 89 (2d Cir. 2000).

Contract interpretation is an issue of law that is reviewed de novo. Lee v. BSB Greenwich Mortgage Ltd. P'ship, 267 F.3d 172, 178 (2d Cir. 2001). Here, the transaction documents reveal the existence of three related, but separate loans, each in a particular amount, with its own promissory note, to be disbursed and repaid in a manner particular to it. The documents that were assigned to State Street pursuant to the Assignment Agreement only pertain, or were assigned only insofar as they pertain, to the outstanding Acquisition Loan. As explained thoughtfully and carefully by the Bankruptcy Court in LH 1440 II, the loan documentation provisions on which Plaintiff relies for its argument that the loan disbursement and collection provisions are inseparable are insufficient to overcome the unambiguous transfer and severability provisions of the relevant agreements. See id., 2010 WL 2889527 at *3-5. Appellant's additional textual argument on appeal, that all of the provisions of all of the agreements, including the loan funding obligations, are incorporated into the Acquisition Loan Security Agreement by section 3.3 of that document and became binding on State Street by virtue of its acquisition of that security agreement (or that the provision at least creates an ambiguity in that regard), is similarly unavailing. Section 3.3 is a borrower's covenant in an agreement dealing solely with security for loan disbursements. While the borrower agrees in that section that all of the covenants, terms and conditions of the Note and "the other Loan

Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein," there is no corresponding lender (or lender transferee) covenant.

The loan funding obligations relating to the Project Loan and Building Loan aspects of the transaction are set forth in the Acquisition and Project Loan Agreement and the Building Loan Agreement. Section 25.1 of each of those agreements provides that the Lender (defined as LBHI) would fund the relevant Loan Advances subject to the satisfaction of certain conditions precedent. Section 25.4 of those agreements provides that the Lender would have no further obligation to "make any . . . Loan Advances following an Event of Default hereunder or under any of the other Loan Documents." Section 10.1 of each of the agreements defines "Event of Default" to include the non-payment of "any portion of the Debt . . . on or before the date upon which the same is due . . . ." There is no stated exception for non-payment resulting from cash flow shortages attributable to failure to fund Project or Building Loan advances.

Appellee has not identified any relevant condition precedent to collection, nor any lender covenant conditioning enforcement of loan repayment or security rights on funding of the outstanding loan commitments. The Bankruptcy Court thus correctly concluded that the allegations of the Amended Adversary Complaint, when read in light of the unambiguous terms of the loan documentation, fail to state plausibly claims upon which relief may be granted as against Appellee, and properly dismissed the Amended Adversary Complaint.

CONCLUSION

For the foregoing reasons, the Bankruptcy Court's July 21, 2010, Memorandum Decision Granting Motion to Dismiss Amended Complaint is affirmed. The Clerk of Court is respectfully requested to close this matter.

SO ORDERED.

Dated: New York, New York
March 8, 2011

LAURA TAYLOR SWAIN
United States District Judge